**CARA M. TANGARO (9197)**
35 West Broadway, Suite 203
Salt Lake City, Utah 84101
Telephone: (801) 673-9984
cara@tangarolaw.com

*Attorney for Defendant Landon Manwaring*

---

### IN THE UNITED STATES DISTRICT COURT

### DISTRICT OF COLUMBIA (WASHINGTON, DC)

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>v.<br><br>LANDON MANWARING,<br><br>  Defendant. | **SENTENCING MEMORANDUM**<br><br><br>Case No. 1:22-CR-00270<br><br>Honorable Carl J. Nichols |

The Defendant, Landon Manwaring, by and through counsel of record, Cara M. Tangaro, hereby submits the following Sentencing Memorandum in support of his position at sentencing.

The Information in this case was entered against Mr. Manwaring on August 10, 2022. On August 26, 2022, Mr. Manwaring entered a plea of guilty to the sole count of the Information, for Unlawful Parading, Demonstrating, or Picketing in a Capitol Building, a Class B Misdemeanor in violation of 40 U.S.C. § 5104(e)(2)(G). Sentencing was scheduled for November 21, 2022. This Court also ordered parties to file any Sentencing Memoranda by November 15, 2022. A draft Presentence Investigation Report ("PSI") was filed with the Court on October 14, 2022.

The single count of conviction does not trigger application of the sentencing guidelines. Thus, the present memorandum will be focused on general considerations at sentencing, and

1

application of factors pursuant to 18 U.S.C. § 3553(a).  In light of such factors, and the application of them to the particular circumstance of Mr. Manwaring, counsel will ask this Court to impose a sentence that does not include a requirement of incarceration.  Despite the violent nature and circumstances of the January 6th events, Mr. Manwaring's particular actions on that day fall into the lower spectrum of comparable culpability and need for punishment, or as the PSI puts it, Mr. Manwaring was an "average participant[] whose conduct was not peripheral to the advancement of the offense."  As an average participant, Mr. Manwaring still acknowledges that he has done wrong: he participated in a mob that caused fear in the public and in government officials, he invaded one of the most important buildings in America, and his actions were part of a larger movement that interrupted democracy.  But Mr. Manwaring must be punished proportionately, given his relatively small role in the actions of January 6.  This Court has sufficient alternatives to confinement which would impose a sentence sufficient but not greater than necessary to meet the ends of justice without imposing a period of incarceration.[1]

## POSITION ON SENTENCING FACTORS

A sentence must be "sufficient, but not greater than necessary[.]" 18 U.S.C. § 3553(a).  To that end, the sentencing court "must make an individualized assessment based on the facts presented."  *Gall v. United States*, 552 U.S. 38, 50 (2007).  Ultimately, a court must "consider all of the § 3553(a) factors," to decide if "they support the sentence requested by a party."  *Id.*  These are: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed; (3) the kinds of sentences available; and (4) the kinds of

---

[1] As the parties have been ordered to file sentencing memoranda simultaneously, Mr. Manwaring is not presently aware of whether the Government will be recommending a sentence that includes any period of incarceration.

sentence and sentencing range established by the guidelines. *See* 18 U.S.C. § 3553(a)(1)-(4) (quotations omitted).

## I. The Nature and Circumstances of the Offense

The events that unfolded on January 6, 2021, are well known. Hundreds of individuals were charged with crimes, including very serious offense conduct against police and other individuals, and against sacrosanct places and principles of our country. However, it is indisputable that the circumstances of January 6 encompassed a very broad spectrum of conduct, and a wide variety of actors that also represent a very broad spectrum of personal characteristics.

Counsel for Mr. Manwaring submits that the circumstances of his conduct and offense fall at the lowest level of these spectra.

Mr. Manwaring takes responsibility for his conduct, as demonstrated the facts recited in his plea agreement. In early January 2021, Landon Manwaring and his mother traveled together to Washington, D.C. to attend rallies in support of former President Donald Trump.[2] On January 5, 2021, the defendant and his mother attended a rally where they were informed by the speakers and fellow rally-goers that the plan for the next day, January 6, 2021, was for people to attend former President Trump's rally on January 6, 2021, and, after former President Trump's speech ended, then march to the U.S. Capitol to attempt to influence the Senate while the Senate tallied the votes of the Electoral College. On January 6, 2021, the defendant and his mother attended former President Trump's rally and then marched to the U.S. Capitol as planned. As he approached the U.S. Capitol building from the west, he saw metal bicycle rack barricades that had been pushed

---

[2] Susan Manwaring was charged with the same offense for essentially identical conduct in case 1:22-CR-00307. She has entered a plea of guilty to the same offense as Mr. Manwaring, and faces sentencing on January 23, 2023 before this same Court. In the interest of proportional sentencing, Mr. Manwaring notes that the Government's recommendations for his mother are also unknown at this time.

aside. The defendant and his mother proceeded with the crowd through the U.S. Capitol's west plaza, where rioters were physically battling police amidst clouds of tear gas. He then followed the crowd up the stairs to the U.S. Capitol building's second level. At approximately 2:23 p.m., the defendant and his mother entered the U.S. Capitol building through the Senate Wing Door, which had been first breached just approximately ten minutes earlier. At the time the defendant entered the U.S. Capitol building, an alarm was sounding, other rioters were climbing into the building through broken windows on either side of the Senate Wing Door, and at least one of the windows of the Senate Wing Door itself was broken. Over the next thirty minutes, the defendant and his mother walked throughout the U.S. Capitol building. They proceeded from the Senate Wing Door to the Crypt to Statuary Hall to the area outside of the Speaker of the House Nancy Pelosi's office to the Rotunda. They then walked down the Old Supreme Court Chamber stairs before finally exiting through the Senate Wing Door at approximately 2:53 p.m. Along the way, the defendant saw broken windows, observed multiple uniformed and armed police officers, posed for photographs, and took photographs of other rioters. The defendant was aware that the Senate intended to tally the Electoral College votes, and thus certify the 2020 presidential election of Joseph R. Biden, on January 6, 2021, the same day that he entered and participated in the occupation of the Capitol building.

    Mr. Manwaring was one of many people swept up in the events of January 6. Numerous people at the Capitol that day lost track of their senses in a crowd of excited or angry, overly stimulated people with likeminded political views. The former President told his supporters that they would go down to the Capitol together as he said, "we're going to walk down to the Capitol."[3]

---

[3] For an hour, President Trump encouraged his supporters to "fight" for him. He said, "*We* will not let them silence your voices…*we're* going to walk down to the Capitol, and *we're* going to cheer on our brave senators and congressman and women, and we're probably not going to be cheering so much for some of them…[if the election is certified], you will

Mr. Manwaring was no exception to the herd-like mentality exhibited by this group.  Like many others, he did something he should not have done – something he likely otherwise *would* not have done if he had been alone – while following a group.  Although Mr. Manwaring takes responsibility for his actions and recognizes that he should have exhibited better judgment overall that day, this Court should note that Mr. Manwaring was not one of the individuals who broke things, stole things, or was violent to any other person.  Discovery in the case shows that he did not post on social media anything about entering the Capitol – he did not brag or try to convince others that his actions were correct.  Discovery also shows that he spent most of his time at the Capitol outside on the terrace near the Senate wing doors through which he entered, spending approximately 30 minutes inside the building.  Even though he was not one of the worst actors of this group, Mr. Manwaring regrets entering the building, and regrets further being part of a group that terrified others and temporarily halted American democracy.

**II.     The History and Characteristics of the Defendant**

Mr. Manwaring's actions on January 6 are not an accurate reflection of his general characteristics and history.  For the most part, Mr. Manwaring has lived a typical life.  Like everyone, he has made mistakes, including those for which he is charged in this case, but he does not act with malice or ill intent.  He works from home at a business started by his mother, which produces orthodontic equipment.  He earns a steady living and contributes to his community.  He

---

have an illegitimate president. That's what you'll have. And *we* can't let that happen…And *we* fight. *We* fight like hell. And if you don't fight like hell, you're not going to have a country anymore." See Brian Naylor, Read Trump's Jan. 6 Speech, A Key Part Of Impeachment Trial, NPR (Feb. 10, 2021), available at
https://www.npr.org/2021/02/10/966396848/read-trumps-jan-6-speech-a-key-part-of-impeachmenttrial

recently combined households with his partner, who is currently 24 weeks pregnant with his first child.  She is due at the end of February.

While Mr. Manwaring has some other criminal history, his record is not extensive.  Much of the PSI discusses a subsequent charge Mr. Manwaring faced in Utah state court, and there is a lengthy summary of the psychosexual evaluation he completed in May of 2022.  On July 20, 2022 Mr. Manwaring pled guilty to a count of Dealing in Harmful Materials to a Minor, which occurred on May 14, 2022, well after the events and charges in this case.  He was sentenced for that offense on October 11, 2022.  Mr. Manwaring has clearly made more than one bad choice.  However, he has already received an appropriate punishment for the Utah offense from the Uintah County court.  He has been convicted of a felony.  He will have to serve a 30-day jail sentence before December 31, 2022.  He will be on probation for 48 months and required to complete sex offender treatment (which he voluntarily began prior to entering his guilty plea).  Additionally, the offense in this case and the Uintah County charge are entirely dissimilar.  They do not demonstrate a pattern of law-breaking behavior, or ill-will toward the law or society.  They simply show a pattern of short-sighted behavior.  For that reason, the defense asks the Court not to doubly punish him for his Utah offense which is unrelated to the case at hand.  However, it is worth noting that Mr. Manwaring is learning from his mistakes in both cases.  Prior to entering his guilty plea, Mr. Manwaring got a psychosexual evaluation and began outpatient sex offender treatment.  This treatment is going well.  He attends therapy twice a week and is working on many of the issues that also played a part in this case.

### III.     The Need for the Sentence Imposed, and the Kinds of Sentences Available

When determining sentencing, this Court must consider the totality of both the circumstances of the offense and the circumstances of the defendant, but also the interests of society.  The sentence must be sufficient but not greater than needed to promote respect for law and appropriate punishment.  Relevant to such consideration is any need for deterrence, protection of the public, and effective tools for rehabilitation of the defendant.

A sentence that does not include incarceration is appropriate in this case.  The offense is a misdemeanor, the misdemeanor of the century perhaps, but a misdemeanor nonetheless.[4]  It is fair to say that generally misdemeanor offenses do not contemplate incarceration absent aggravating factors such as significant criminal history, physical injury or serious property damage, lack of remorse, etc.  This Court has ample options and resources that are available to impose a sentence of probation with conditions that meet the interests of justice as to Mr. Manwaring in his individual circumstance.

The United States Supreme Court as opined that even a non-custodial sentence can satisfy the need for deterrence and justice:

> We recognize that custodial sentences are qualitatively more severe than probationary sentences of equivalent terms. Offenders on probation are nonetheless subject to several standard conditions that substantially restrict their liberty. See *United States v. Knights,* 534 U.S. 112, 119, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001) ("Inherent in the very nature of probation is that probationers 'do not enjoy the absolute liberty to which every citizen is entitled' " (quoting *Griffin v. Wisconsin,* 483 U.S. 868, 874, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987))).[FN4] Probationers may not leave the judicial district, move, or change jobs without notifying, and in some cases receiving permission from, their probation officer or the court. They must report regularly to their probation officer, permit unannounced visits to their homes, refrain from associating with any person convicted of a felony, and refrain from excessive drinking. USSG § 5B1.3. Most probationers are also subject to individual "special conditions" imposed by the court.
>
> FN4. See also Advisory Council of Judges of National Council on Crime and

---

[4] Class B misdemeanors are defined as "petty offenses" at 18 USC §§19 and 3583(b)(3).

>Delinquency, Guides for Sentencing 13–14 (1957) ("Probation is not granted out of a spirit of leniency .... As the Wickersham Commission said, probation is not merely 'letting an offender off easily' "); 1 N. Cohen, The Law of Probation and Parole § 7:9 (2d ed. 1999) ("[T]he probation or parole conditions imposed on an individual can have a significant impact on both that person and society .... Often these conditions comprehensively regulate significant facets of their day-to-day lives .... They may become subject to frequent searches by government officials, as well as to mandatory counseling sessions with a caseworker or psychotherapist").

*Gall v. United States*, 552 U.S. 38, 48-49 (2007).

Mr. Manwaring did not go to D.C. with the intent to violate the law. Once he was at the Capitol, he certainly became aware that he should not have been doing what he was doing. His actions were not something he would have done alone – trespassing on a government building and using fear to influence a government processes. In that moment, surrounded by people, he lost his critical thinking skills. He became short-sighted and impulsive. He did not intend to contribute to the fear and anger of the day, and he regrets having done so. Overall, incarceration will not cause him to learn his lesson to any greater degree. Mr. Manwaring needs to repent for his actions, which can be achieved best through community service and a period of probation, which would ultimately be more beneficial to society than incarcerating him.

### IV.     Avoiding Unwarranted Sentencing Disparities

Even though the federal sentencing guidelines do not apply to a Class B Misdemeanor, the purpose of applying the guidelines would be to avoid unwarranted disparities in sentencing. It appears that other defendants charged and convicted of similar misdemeanors, and sentenced under similar offense conduct and personal characteristics, have not received a punishment of incarceration in connection with their probation. Counsel for Mr. Manwaring has surveyed some of

the other misdemeanor cases that have been sentenced.  Below are some examples of cases where the defendant was convicted of exactly the same crime as Mr. Manwaring.

Some of these cases show similar conduct to that of Mr. Manwaring:

- *U.S. v. Eliel Rosa*, 21-CR-068 (TNM) (October 12, 2021): Judge McFadden imposed a sentence of 12 months' probation.  The Government asked for 30 days of home detention and 36 months' probation.  In that case, the defendant accepted responsibility early on, did not pre-plan or coordinate his activities, did not go far into the Capitol building, and left when asked to do so by law enforcement.

- *U.S. v. Jennifer Parks*, 21-CR-363 (CJN) (December 8, 2021): Judge Nichols imposed a sentence of 24 months' probation.  The Government asked for 30 days home detention and 36 months' probation.  In that case, the defendant entered the Capitol, did not personally engage in or espouse violence or property destruction, took photos, and exited when instructed by law enforcement.
- *U.S. v. Antonio Ferrigno*, 21-CR-586 (RC) (September 15, 2022): Judge Contreras imposed 12 months' probation.  The Government requested 30 days' incarceration and 36 months' probation.  In that case, the defendant had some text messages with others before the rally anticipating a "riot" and "civil war," but ultimately only spent 10 minutes inside the Capitol.

- *U.S. v. Matthew Clark*, 21-CR-218 (APM) (October 28, 2022): Judge Mehta imposed 24 months' probation.  The Government requested 4 months' home detention and 36 months' probation.  In that case, the defendant entered the Capitol with a crowd, witnessed the beginning of violent events, and left without getting involved.

Other cases with similar charges, but with demonstrably more serious conduct from the defendants also received sentences with no incarceration:

- *U.S. v. Danielle Doyle*, 21-CR-324 (TNM) (October 1, 2021): Judge McFadden imposed a sentence of 2 months' probation.  The Government asked for two months of home detention and 36 months' probation.  The defendant in that case entered the Capitol through a broken window and chanted at in the direction of law enforcement when confronted and asked to leave.  She also ignored the request to leave and went deeper into the building, into the Supreme Court Chamber and the Crypt.

- *U.S. v. Julia Sizer*, 21-CR-621 (CRC) (February 1, 2022): Judge Cooper imposed 12 months' probation.  The Government requested 2 months' home detention and 36 months'

9

probation. In that case, the defendant entered the capitol, stayed for only a few minutes, but took video of rioters with an alarm blaring, which she shared with others via private message. She also falsely told the FBI that she did not go inside when contacted about the case.

- *U.S. v. William Blauser*, 21-CR-386 (TNM) (February 3, 2022): Judge McFadden imposed no incarceration or probation, only a $500 fine and restitution. The Government requested 3 months' home detention and 36 months' probation. The defendant is alleged to have pushed his way through the East Rotunda door and had a physical confrontation with law enforcement, lowering his shoulder to push into them.

- *U.S. v. Cara Hentschel*, 21-CR-667 (FYP) (September 30, 2022): Judge Pan imposed 36 months' probation. The Government requested 3 months incarceration and 36 months' probation. The defendant in this case entered through the Rotunda doors, minutes after the violent breach where officers were assaulted and the doors' glass panels were broken; posted many items to social media before and during the days after the riot celebrating the event, admitted to deleting incriminating information from her phone before being arrested, had an extensive criminal history, and was on felony probation when she traveled to D.C..

Certainly, there are counterexamples where courts have seen fit to impose some period of jail in connection with misdemeanor sentences. However, those cases typically have some aggravating circumstance present. Mr. Manwaring respectfully submits that there is nothing materially different about his sentencing circumstance that would warrant a variation from similar treatment as defendants that did not suffer incarceration as part of their misdemeanor sentences.

## **CONCLUSION**

Mr. Manwaring loves this country and cares deeply about it. His political beliefs did not drive him to commit the crime he is being sentenced for today: it was entirely his lack of critical thinking at the time of the events that caused him to be so easily persuaded to do wrong, while feeling protected by a group doing the same or worse. He takes responsibility for that failure.

Looking back on the situation now, Mr. Manwaring expresses that if he had known how out of hand things would get, he would not have gone to D.C.. During the events, he simply was not thinking about what he was doing, and he was not making smart decisions. He has learned from the experience and is working to adjust his thinking to prevent further lapses of judgment. Incarceration, however, will not instill that lesson better than the other viable alternatives that are available and warranted given the totality of the circumstances in the present case. Mr. Manwaring has no excuse for committing the serious offense of trespassing in the Capitol on January 6, 2021. The best way he can repay society is through acts of service and supervised good behavior, rather than incarceration.

RESPECTFULLY SUBMITTED this 15th day of November, 2022.

/s/ Cara M. Tangaro
Cara M. Tangaro
Attorney for Defendant Landon Manwaring

DELIVERY CERTIFICATE

I certify that a true and correct copy of the foregoing was caused to be delivered to all involved parties, by electronic filing, as well as email courtesy copy, on the 15th day of November, 2022.

/s/ Cara M. Tangaro